# STATE OF MICHIGAN

# COURT OF APPEALS

In re CAW and EDGW, Minors.

UNPUBLISHED
February 14, 2017

No. 333682
Wayne Circuit Court
Family Division
LC No. 16-000117-AO

Before: WILDER, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Petitioners, proceeding *in propria persona*, appeal as of right a circuit court order denying their § 45 challenge, MCL 710.45, to the decision of the Michigan Children Institute's superintendent withholding consent to adopt, and dismissing petitioners' petition to adopt the two minor children. We affirm.

## I. FACTS AND PROCEEDINGS

Petitioners are the maternal grandmother and step-grandfather of the two minor children. The children were removed from their mother's custody in a prior child protection proceeding because of ongoing physical abuse inflicted by their mother's boyfriend. Petitioners offered their home as a placement setting for the children in the prior proceeding. Their request was denied, in part, because petitioner GP had been placed on Child Protective Services (CPS) Central Registry for an incident of abuse against the minor children's mother, AW, in 2003, when AW was a teenager, which resulted in GP's conviction of fourth-degree child abuse. In addition, there were concerns that petitioners did not fully acknowledge AW's responsibility for the children's abuse, and the children's therapist recommended against contact with relatives due to the trauma the children had suffered from their exposure to abuse. Therefore, the children were placed in non-relative foster care.

The parental rights of AW were eventually terminated in June 2015.[1] Petitioners subsequently filed a petition with respondent, the Michigan Children's Institute (MCI), requesting the MCI superintendent's consent to their adoption of the minor children. Following

---

[1] This Court affirmed that decision in *In re Wilson*, unpublished opinion per curiam of the Court of Appeals, issued May 26, 2016 (Docket No. 328388).

an investigation, the superintendent denied petitioners consent to adopt.[2] Petitioners requested a § 45 hearing in circuit court, MCL 710.45, to challenge the superintendent's decision. Following a hearing, the circuit court found that the superintendent's decision to withhold consent to adopt was not arbitrary or capricious, and therefore, denied petitioners' motion and dismissed their petition to adopt. Petitioners appeal that decision.

## II. REVIEW OF THE MCI SUPERINTENDENT'S DECISION

Petitioners argue that the circuit court's decision denying their § 45 challenge was the product of judicial bias and misconduct, as well as the court's misunderstanding and misapplication of the applicable law. We disagree.

MCL 710.45(2) provides that if an adoption petitioner is denied consent to adopt, "the petitioner may file a motion with the court alleging that the decision to withhold consent was arbitrary and capricious." "Unless the petitioner establishes by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious, the court shall deny the motion . . . and dismiss the petition to adopt." MCL 710.45(7). Thus, "[p]ursuant to MCL 710.45, a family court's review of the superintendent's decision to withhold consent to adopt a state ward is limited to determining whether the adoption petitioner has established clear and convincing evidence that the MCI superintendent's withholding of consent was arbitrary and capricious." *In re Keast*, 278 Mich App 415, 423; 750 NW2d 643 (2008). Whether the circuit court properly applied this standard is a question of law, which this Court reviews for clear legal error. *Id*.

Because petitioners did not move for the circuit court judge's disqualification or otherwise raise the issue of judicial bias or misconduct before the circuit court, these claims are not preserved. See MCR 2.003(D); *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Accordingly, we review the unpreserved claims for plain error affecting petitioners' substantial rights. *Id*.

When reviewing the MCI superintendent's decision, "if there exist good reasons why consent should be granted and good reasons why consent should be withheld, it cannot be said that the representative acted arbitrarily and capriciously in withholding that consent even though another individual . . . might have decided the matter in favor of the petitioner." *In re ASF*, 311 Mich App 420, 436; 876 NW2d 253 (2015), quoting *In re Cotton*, 208 Mich App 180, 185; 526 NW2d 601 (1994). The generally accepted meaning of "arbitrary" is "determined by whim or caprice," or "arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, . . . decisive but unreasoned." *Goolsby v Detroit*, 419 Mich 651, 678; 358 NW2d 856 (1984) (quotation marks and citations omitted). The generally accepted meaning of "capricious" is "[a]pt to change suddenly; freakish; whimsical; humorsome." *Id.* (quotation marks and citations).

---

[2] The superintendent later granted a competing application for consent to adopt filed by the children's foster parents.

Petitioners argue that the circuit court "abused [its] discretion" and improperly believed that it "didn't have any discretion in making a decision based on [its] faulty interpretation of the legislature[']s intentions of the law." The record discloses that the circuit court accurately recited the governing standard. Indeed, its recitation of the law is a nearly verbatim statement of the applicable legal standard set forth in this Court's decision in *In re ASF*, 311 Mich App at 436. The court properly acted within the narrow confines of MCL 710.45. It did not have discretion to revisit the superintendent's decision based on its own evaluation of the evidence, or based on a finding that the superintendent should have subjected the foster parents to greater scrutiny. The circuit court also did not have discretion or authority to require the superintendent to compare the foster family and petitioners on an equal basis. The superintendent was not required to start with a presumption of equality between petitioners and the foster family; rather, she was prohibited from deciding the matter arbitrarily (by whim or caprice) or capriciously (freakish or apt to change suddenly). See MCL 710.45(7); *Goolsby*, 419 Mich at 678; *In re ASF*, 311 Mich App at 436. The record discloses that the circuit court properly confined its review to whether the MCI superintendent withheld consent for reasons that were arbitrary and capricious.

The superintendent explained that she denied petitioners' request for consent to adopt because moving the children out of a stable home, where they had begun to recover from the trauma of their abusive home, and where they had formed attachments with the foster parents, would be traumatic and disruptive for the very young children. This decision was not whimsical; it was based on reports by social workers and therapists who had been in contact with the children and the foster family. Moreover, the superintendent testified that she also gave weight to petitioner LP's equivocations regarding her daughter AW's failure to protect the children, and to petitioner GP's past incident of abuse against AW. These facts raised reasonable concerns about the children's possible contact with their mother, and the concern that GP might lose control of his temper as he did with his AW. The superintendent's testimony established that good reasons for denying consent to adopt existed. See *In re ASF*, 311 Mich App at 436.

Petitioners assert that the circuit court judge was unprofessional, that he repeatedly expressed his dislike of adoption cases, and that he was biased in respondent's favor. A party "claiming judicial bias must overcome a heavy presumption of judicial impartiality." *Jackson*, 292 Mich App at 598 (internal quotation marks and citation omitted). "[A] trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *In re MKK*, 286 Mich App 546, 567; 781 NW2d 132 (2009). Bias is not established "merely by repeated rulings against a litigant, even if the rulings are erroneous." *Id*. at 566.

We have reviewed the challenged conduct and comments by the circuit court judge and find no indication that he was biased or partial against petitioners or in favor of respondent. Although the judge candidly admitted his discomfort with competing adoption cases, there is no indication that he was partial to one side or the other, or inattentive to this case. On the contrary, the judge was fully engaged in the hearing. He actively addressed the attorneys' arguments, even when they became redundant. Viewed in context, the judge's comments about his displeasure with adoption cases pertained to the emotionally charged nature of the proceedings and the recognition that his decisions in such cases are difficult because children's futures are at stake. The judge's comments reflect conscientiousness, not indifference.

-3-

The circuit court judge's conduct and remarks do not evince bias against petitioners or in favor of respondent. The judge gave petitioners substantial leeway in allowing their counsel to question the MCI superintendent outside the narrow scope of the arbitrary and capricious inquiry. The judge demonstrated patience with petitioners' counsel's repeated arguments that the arbitrary and capricious standard allowed him to delve into the details of the superintendent's investigation. The instance in which the judge invited an objection on respondent's behalf, but respondent's counsel replied that she had no objection, involved petitioners' questions to the superintendent regarding information obtained from the guardian ad litem, which implicated the attorney-client privilege. The judge did not overrule petitioners' objections to respondent's opening remarks based on "professional courtesy." Rather, he rejected petitioners' characterization of the argument as "eliciting testimony," and replied that the attorneys have substantial freedom in opening statements. Regardless, the trial was not a jury trial, so there was no danger of a jury confusing arguments with evidence.

In sum, the record does not support petitioners' claims that the circuit court improperly applied the law, or that its decision was the product of judicial bias or misconduct.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioners argue that the attorney who represented them at the outset of this case, and the attorney who assumed their representation, committed numerous errors that amounted to ineffective assistance of counsel. Petitioners seek a new trial on that basis. The question whether ineffective assistance of counsel is grounds for relief in an adoption case is a question of law, which is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

In the criminal context, a defendant may obtain relief from a conviction if the performance of defense counsel "was so objectively deficient that counsel was not performing as the attorney guaranteed by the constitution." *People v Orlewicz*, 293 Mich App 96, 107-108; 809 NW2d 194 (2011). The relationship between a criminal defendant's constitutional right to liberty, and the concept of ineffective assistance as grounds for relief in a criminal case, is reflected in our Supreme Court's decision in *People v Trakhtenberg*, 493 Mich 38; 826 NW2d 136 (2012). In *Trakhtenberg*, the Supreme Court held that the doctrine of collateral estoppel did not preclude a criminal defendant from raising a claim of ineffective assistance of counsel in a criminal matter although that defendant had failed to prevail in a legal malpractice action against the attorney in a related civil case. *Id*. at 50-51. The Supreme Court held that a "defendant's interest when pursuing his civil malpractice claim differed from his interest in asserting his constitutional right to effective counsel in the criminal proceeding." *Id*. at 51. The Court explained that the defendant "sought monetary gain in the malpractice case, whereas in his criminal case he seeks protection of a constitutional right and his liberty." *Id*.

The criminal law concept of ineffective assistance of counsel applies by analogy to child protection proceedings. *In re J R Martin*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket Nos. 330231; 330232); slip op at 5. The basis for applying the concept of ineffective assistance of counsel to child protection proceedings is the recognition that " '[p]arents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process.' " *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014), quoting *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003).

The constitutional interests arising from criminal prosecutions and child protection proceedings do not apply to this case. Unlike parents, grandparents do not have a fundamental right to a relationship with their grandchildren. *Brinkley v Brinkley*, 277 Mich App 23, 31; 742 NW2d 629 (2007). In *Brinkley*, a case involving grandparents' right to visitation with their grandchildren, this Court noted that MCL 722.27b, which limits the circumstances in which grandparents can petition for visitation, was amended to correct constitutional deficiencies in the prior version of the statute. *Id*. at 32. The prior version was constitutionally defective because it infringed upon "the parents' fundamental right to manage the upbringing of their children." *Id*. When parental rights have been terminated, as occurred in this case, there is no longer a conflict between the rights of parents and the interests of grandparents. Because petitioners do not have a constitutionally protected interest in their right to a relationship with the minor children, there is no basis for applying the concept of ineffective assistance of counsel to their legal representation in this adoption case. Accordingly, we reject petitioners' request for relief on this ground.

## IV. ACCUSATIONS OF UNETHICAL CONDUCT

Petitioners accuse the MCI superintendent, the children's guardian ad litem, and the foster parents of improper and unethical misconduct. These claims are without merit.

Petitioners contend that the MCI superintendent fabricated evidence and presented false testimony. Although petitioners questioned the foundation for some of the superintendent's conclusions, there is no indication that the superintendent fabricated evidence or presented false evidence. The superintendent explained what documents and evidence she consulted, and which items she considered important. The superintendent candidly admitted that she did not conduct an in-depth investigation of all of petitioners' circumstances. She explained that maintaining the continuity of the children's placement with their foster parents weighed against placing them with petitioners. The superintendent was not inconsistent in her testimony regarding petitioner LP's health problems or petitioner GP's CPS history and expunged conviction. The superintendent testified that petitioner LP's cancer was not a significant consideration in her decision to withhold consent to adopt because it was in remission. The superintendent did not contradict herself on this matter. The superintendent stated that she did not place a lot of emphasis on petitioner GP's prior conviction for child abuse, but explained that the incident was of some concern because it was reflective of his ability to control his temper.

Petitioners' accusations against the children's GAL primarily involve an unrelated case in which the attorney was involved as a party. Petitioners have not shown that these accusations have any relevancy to this case. Likewise, petitioners' remaining accusations against the GAL and against the foster parents have no relevance to the determination whether the MCI

superintendent's decision denying petitioners' request for consent to adopt was arbitrary and capricious.

Affirmed.

/s/ Kurtis T. Wilder
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly